UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **TONY WILLIAMS**, individually, and on behalf of others similarly situated, | : <br> : <br> : Case No: <br> : |
| Plaintiff, | : Hon. <br> : |
| v. | : Mag. <br> : |
| **RH**, a foreign corporation, | : <br> : |
| Defendant. | : <br> : <br> : |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Tony Williams ("Plaintiff"), hereby brings this Collective and Class Action Complaint against Defendant, RH ("Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2. Defendant holds itself out to be "a leading retailer and luxury lifestyle brand operating primarily in the home furnishings market[,]" and "offer[s] merchandise assortments across a number of categories, including furniture, lighting, textiles, bathware, décor, outdoor and garden, and baby, child and teen furnishings."[1] Defendant offers its products in its "retail locations,

---

[1] *See* https://ir.rh.com/financials-filings/annual-filings/content/0001558370-23-010413/0001558370-23-010413.pdf (last visited Nov. 6, 2023).

websites and Source Books."[2]

3.  In providing the aforementioned services, Defendant employed hourly customer service representatives in brick and mortar call centers and in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Home Delivery Scheduling Associate and Customer Service Representative, to refer to its hourly call center employees (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, receive and field calls from and make calls to Defendant's customers.

4.  Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing customer service to Defendant's clients.

5.  Defendant employed Plaintiff as a CSR.

6.  The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

7.  One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.  More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

---

[2] *Id.*
[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Nov. 6, 2023).

shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts, when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each shift.

11. Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding him unpaid back wages, liquidated damages, attorneys' fees and costs to make him and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

**JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

14. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15. Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

17. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of California, employs individuals within the state of California, and maintains its principal place of business in the state of California.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs CSRs in this District, conducts business in this District, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this District.

## INTRADISTRICT ASSIGNMENT

19. A substantial part of the events or omissions giving rise to the claims outlined herein occurred in Marin County; therefore, this action is properly assigned to the San Francisco Division. N.D. Cal. Local Rule 3-2(c)-(d).

## PARTIES

20. Plaintiff Tony Williams is a resident of Zephyrhills, Florida and worked for Defendant in its Tampa, Florida brick and mortar call center as a non-exempt CSR from approximately May 2022 to August 2022. Defendant compensated Plaintiff through the payment

of an hourly rate, most recently $21.00 per hour. Plaintiff Williams signed a consent to join this collective action, which is attached as **Exhibit A**.

21. Additional Collective members were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

22. Defendant RH is a Delaware corporation (File No. 5025988) headquartered in Corte Madera, California. Defendant maintains a registered agent for service of process listed as The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## GENERAL ALLEGATIONS

23. Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and hourly rate of pay.

24. Defendant maintained documentation of the promised wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

25. Plaintiff received an offer from Defendant to work as a CSR, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

26. Plaintiff performed under the agreement with Defendant by carrying out his job duties and responsibilities. More specifically, Plaintiff delivered over-the-phone customer service to Defendant's clients which included, but was not limited to, setting up home delivery scheduling appointments, providing in-the-moment solutions for complex customer scenarios, and collaborating with internal and external partners to resolve customer challenges. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid

off-the-clock work explained below.

27. Defendant paid its CSRs at varying hourly rates.

28. Defendant's CSRs, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per workweek.

29. Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSRs was substantially, if not entirely, the same.

30. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

31. Defendant required Plaintiff and all other CSRs to use a computer and a variety of integral and indispensable computer programs, applications, and servers in order to perform their job duties.

32. Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

33. Defendant enforced its "call ready" policy through its uniform compensation, timekeeping, and attendance procedures, and the call quality assurance system it used to monitor and grade its CSRs' calls. More particularly, Defendant routinely evaluated, and at times

disciplined, CSRs based on schedule adherence and call quality metrics. For example, Defendant maintained a "non-negotiable" 10 Point Call Quality Audit Point system to measure CSR call performance, including recitation of Defendant's verbiage during calls.

34. Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status.

35. Defendant's policies, procedures, standards and processes necessarily required CSRs to be logged into all computer programs, applications and systems at the time their scheduled shift started.

36. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the CSRs' work and they could not perform their jobs without them.

37. Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, and when they logged out of the programs and applications that they utilized during their shifts and put to sleep or shut down their computer.

38. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

39. The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

40. As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately seven (7) to twenty-five (25) minutes of compensation every shift.

41. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its agreements with its CSRs.

42. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

43. Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

44. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each shift, along with the time they logged into the timekeeping system.

45. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

46. Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

### A. Pre-Shift Off-the-Clock Work

47.     The off-the-clock pre-shift process took approximately five (5) to twenty (20) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

   a.  Turn on or wake up their computer;

   b.  Log into Microsoft Windows using a username and password;

   c.  Open Google Chrome;

   d.  Log into Defendant's dispatch track, the application used for locating deliveries and delivery information, using a username and password;

   e.  Log into Defendant's applications for obtaining furniture information using a username and password;

   f.  Log into Google Meet, the application Defendant's CSRs used for connecting with management and other supervisors, using a username and password;

   g.  Open Avaya using a username; and

   h.  Clock in and go into a "ready" status at the start of their scheduled shift.

48.     Defendant's CSRs had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to begin working at least five (5) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

49.     Defendant's CSRs were not compensated for all of this time because Defendant prohibited its CSRs from clocking into the timekeeping software before the start of their scheduled shift.

50.     The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

51.     Defendant's management knew or should have known that Plaintiff and other CSRs

9

performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

### B. Post-Shift Off-the-Clock Work

52. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock-out as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems they utilized in performing their job duties and put their computer to sleep. This resulted Plaintiff and other CSRs performing an additional two (2) to five (5) minutes of off-the-clock work every shift.

53. The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

54. Defendant's management knew or should have known that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

### C. The Off-the-Clock Work Results in Viable "Gap Time" Claims

55. Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

56. Plaintiff, and all similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

57. During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with its CSRs.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former CSRs who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

59. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

60. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

61. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

62. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

63. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime

premium for all hours worked in excess of forty (40) per workweek.

64. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice included, but is not limited to:

  a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours they worked off-the-clock in non-overtime workweeks;

  b. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

  c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

65. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

66. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

67. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and

overtime for hours worked over forty (40) in a week.

68. Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

69. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME

70. Plaintiff re-alleges and incorporates all previous paragraphs herein.

71. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

72. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

73. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

74. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

75. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

76. Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

77. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

78. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

79. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

80. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

81. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA

Collective's regular hourly rate.

82. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

83. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

84. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

85. Plaintiff re-alleges and incorporates all previous paragraphs herein.

86. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

87. Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

88. For example, Defendant offered to compensate Plaintiff at a minimum of $21.00 per hour if he agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed his duties as a CSR in reliance on the offer.

89. Defendant breached is contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

90. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $21.00 per hour within the applicable period.

91. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

92. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

93. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

94. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock

activities, which is a fundamental part of an "employer's job."

95. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III
RULE 23 NATIONWIDE CLASS ACTION
UNJUST ENRICHMENT**

96. Plaintiff re-alleges and incorporates all previous paragraphs herein.

97. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

98. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

99. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

100. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

101. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

102. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

103. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

104. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

105. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

106. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

    e.  An Order declaring Defendant violated the FLSA;

    f.  An Order declaring Defendant's violations of the FLSA were willful;

    g.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre- and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

    h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

    i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

    j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

    k.  An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Tony Williams, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: November 6, 2023               Respectfully Submitted,

                                                          /s/ Kevin J. Stoops
                                                          Kevin J. Stoops (CA Bar No. 332200)
                                                          402 W Broadway Suite 1760
                                                          San Diego, CA 92101
                                                          Telephone: 248-355-0300
                                                          kstoops@sommerspc.com

                                                          Alana A. Karbal (*pro hac vice* forthcoming)
                                                          SOMMERS SCHWARTZ, P.C.
                                                          One Towne Square, 17th Floor
                                                          Southfield, Michigan 48076
                                                          Telephone: 248-355-0300

akarbal@sommerspc.com

*Attorneys for Plaintiff and the
Putative Collective/Class Members*